■ JOSEPH J. BUDERWITZ, JR., Respondent, v PATRICK C. CUNNINGHAM et al., Appellants. — In an action seeking, *inter alia,* reimbursement for expenses incurred, defendants appeal from an order of the Supreme Court, Westchester County (Jiudice, J.), entered November 9, 1982, denying their motion for an order excusing their default in answering and directing plaintiff to accept late service of defendants' verified answer and counterclaim. The appeal brings up for review so much of an order of the same court, entered January 18, 1983, as, upon reargument, adhered to its original determination. ¶ Appeal from the order entered November 9, 1982, dismissed, without costs or disbursements. Said order was superseded by the order of the same court, entered January 18, 1983. ¶ Order entered January 18, 1983 reversed, insofar as reviewed, as a matter of discretion, without costs or disbursements, and, upon reargument, order entered November 9, 1982 vacated and defendants' motion, *inter alia,* for an order excusing their default granted. Defendants' time to serve a verified answer on plaintiff is extended until 20 days after service upon them of a copy of the order to be made hereon, with notice of entry; in the event defendants fail to serve their answer within this period, order affirmed, insofar as reviewed, with costs. (See *S.G.S.G. Constr. Corp. v Marr,* 96 AD2d 937; *Tehan v Tehan,* 97 AD2d 840.) ¶ On July 27, 1982, plaintiff personally served a summons and verified complaint upon the defendants in White Plains, New York. Service of a verified answer was to be made 20 days thereafter (CPLR 3012, subd [a]). However, defendants did not serve their verified answer and notice of appearance upon plaintiff until September 4, 1982, some 19 days after the time in which they were required to answer had expired. No application to extend the time to answer was made (see CPLR 3012, subd [d]). After the time to answer had expired, defendants asked plaintiff to stipulate to an extension of time, but plaintiff refused. ¶ By letter dated September 13, 1982, plaintiff advised defendants that service of their verified answer was untimely, and that, because no application for an extension of time had been made, their answer was being returned to them. ¶ By notice of motion and affidavit sworn to on September 17, 1982, defendants moved for an order directing plaintiff to accept late service of the verified answer. Included with the motion were defendants' notice of appearance and verified answer, the afore-mentioned letter, dated September 13, 1982, counsel's further affidavits, sworn to September 27 and October 1, 1982, submitted in response to plaintiff's opposing affidavits, and defendant Patrick Cunningham's affidavit, sworn to October 1, 1982. ¶ In the moving papers, defendants' counsel attributed the untimely service of the verified answer, *inter alia,* to (1) a matrimonial action between plaintiff and defendant Liberta Buderwitz, which action had ended in a judgment of divorce in defendant Buderwitz's favor approximately two months before the instant action was commenced; (2) events subsequent to the matrimonial action, including the removal, on or about August 2, 1982, from the marital residence of defendant Liberta Buderwitz and her daughter; (3) counsel's inability to contact the defendants after August 2 until the end of August; (4) ongoing litigation between plaintiff and defendant Patrick C. Cunningham; (5) counsel's vacation plans, which had to be cut short in order to serve the verified answer; and (6) plaintiff's refusal to consent to an extension of time as well as plaintiff's over-all failure to extend "professional courtesy" to

counsel. Plaintiff opposed the application contending in essence that untimely service was the result of "law office failure", which, under the circumstances of this case, should not relieve defendants of their default. ¶ By order entered November 9, 1982, Special Term denied defendants' application. The court explained that "[N]o motion was made by the defendants to extend their time to answer before service of their answer was due. Additionally, no affidavits of merit is [*sic*] submitted by the defendants and the excuse proffered to excuse the delay herein is nothing more than law office failure which cannot be utilized in excusing a default (*Barasch v Micucci*, 49 NY2d 594 [1980]; *Eaton v Equitable Life Assurance Society of U.S.*, [56] NY2d [900] [1982])". Defendants appealed from this order. ¶ By notice of motion dated November 29, 1982, defendants moved, *inter alia,* for an order granting leave to reargue their motion to compel plaintiff's acceptance of the verified answer. In his affirmation dated November 29, 1982 and reply affirmation dated December 16, 1982, counsel, *inter alia,* reviewed the events leading up to the late service of the verified answer, including the afore-mentioned litigations between the parties to this action, and stated that in addition to the reasons for late service outlined in the initial motion was counsel's mistaken belief as to when the verified answer actually had to be served. By order entered January 18, 1983, Special Term granted leave to reargue, and, upon reargument, adhered to its original determination. ¶ As we recently noted in *La Buda v Brookhaven Mem. Hosp. Med. Center* (98 AD2d 711): "In * * * enacting CPLR 2005 (L 1983, ch 318), the Legislature effectively overruled the rigid approach to both pleading defaults and defaults in connection with other intra-action procedures caused by law office failure set forth in *Barasch v Micucci* (49 NY2d 594), *Eaton v Equitable Life Assur. Soc.* (56 NY2d 900) and their progeny * * * The new legislation rejected the proposition that law office failure is an insufficient excuse as a matter of law and restored to the courts the discretion possessed prior to *Barasch* (*supra*). Accordingly, law office failure may now again be weighed along with several other relevant factors in determining motions to open defaults of this nature, i.e., the particular excuse for the delay, the merits of the action, if any, as demonstrated by an affidavit containing evidentiary facts and attested to by an individual with personal knowledge of those facts, the length of the delay and seriousness of the injury * * * However, it was not the intent of the new legislation to routinely excuse defaults" (accord *De Leo v Bertucci,* 98 AD2d 708). ¶ Moreover, this new legislation is " 'remedial in nature' and applicable to all proceedings which are 'still * * * pending before a court; or [for which] the time for taking of an appeal from any order or judgment in such action has not yet expired' (L 1983, ch 318, § 3)" (*S.G.S.G. Constr. Corp. v Marr,* 96 AD2d 937, *supra;* accord *Wagenknecht v Government Employees Ins. Co.,* 97 AD2d 407, 408). ¶ We conclude that, in a proper exercise of discretion, defendants' default should be excused. The period of delay was minimal (see *Wagenknecht v Government Employees Ins. Co., supra* [minimal delay where answer mailed 21 days after time to answer had expired]). They had sought from plaintiff an extension of time to answer, albeit after the time to answer had expired, and, after the request was denied, they promptly moved for an order excusing their default (see *Himmelstoss v Parent's Aid Soc.,* 96 AD2d 576, 577). Defendants' verified answer, containing general denials, and asserting three affirmative defenses and one counterclaim, constitutes, in our view, a sufficient statement of merits (see CPLR 105, subd [t]; *Salch v Paratore,* 60 NY2d 851; *Bethlehem Steel Corp. v Solow,* 51 NY2d 870; cf. *La Buda v Brookhaven Mem. Hosp. Med. Center, supra; Brann v City of New York,* 96 AD2d 923, 924-925). Under the circumstances present in the case at bar, defendants had a reasonable excuse for what, in any event, was a minimal delay (see *Himmelstoss v Parent's Aid Soc., supra,* p 577). In short, it

is clear from what has been presented to us that defendants never intended to abandon the defense of this action or their counterclaim (see *S.G.S.G. Constr. Corp. v Marr, supra,* p 938). Mollen, P. J., Gibbons, Weinstein and Rubin, JJ., concur.